OPINION OF THE COURT
Victor J. Alfieri, Jr., J.
DISMISSAL OF CHARGES DUE TO VAGUENESS OF STATUTE
The defendants’ motion is made pursuant to CPL 170.30 (1) (f) alleging in essence, that "[t]here exists some other jurisdictional or legal impediment to conviction of the defendants] for the offense charged”. (CPL 170.30 [1] [f].) Defendants contend an impediment to conviction on the charge of driving with a suspended license, second degree (Vehicle and Traffic Law § 511 [2] [a]), lies in each case due to the fact that such revocation may only be imposed for a finite period and may not continue indefinitely. The defendant’s argument may be summarized as follows: "Essentially the defendant argues that strict construction of penal statutes found outside the Penal Law mandate a finding herein that the defendant was not driving during a suspension period. Suspension of a driver’s license is a statutorily mandated penalty which is triggered upon conviction of an alcohol driving offense. Penalties, of course, are uniform and of state-wide application. For the Court to find in the case at bar that the defendant was driving during a suspension period occurring long after the expiration of the minimum revocation period delineated by statute would in effect be tantamount to holding that the revocation period is of indefinite duration, or is perhaps of different and varying duration, depending what the policy of the particular Probation Department or judge involved is or possibly the opinion of the Motor Vehicle analyst involved at the Department of Motor Vehicle [sic] who reviews the case. Simply stated, there is no way that any person convicted of an alcohol driving offense at the time sentence is imposed will know what the penalty he is facing is in this circumstance if the statutorily mandated revocation can be of varying durations for these reasons. Such a statutory scheme cannot pass constitutional muster.” (Supplement letter to omnibus motion of James Mellion, Esq., dated Oct. 13, 1994, at 1-2.)
It has been held that to the extent a legislative enactment proscribes conduct, and in this instance conduct which is malum prohibitum rather than malum in se, the statute must *434 clearly describe the prohibited conduct. (State of New York v Mobil Oil Corp., 38 NY2d 460, 466.) The issue in State of New York v Mobil Oil Corp. was whether there was fair warning of the proscriptions of the statute. Likewise in People v Berck (32 NY2d 567), it was held that subdivision (6) of section 240.35 of the Penal Law, defining loitering, had utterly failed to give adequate notice of the behavior it forbids. (People v Berck, supra, at 569.) People v Berck involved an attack on a loitering statute which allowed police to take into custody any person who was "loitering 'in or about a place without apparent reason’ [and] under circumstances which 'justify suspicion’ that a person 'may be engaged or about to engage in [a] crime’.” (People v Berck, supra, at 569.) The Court held that the statute was "unconstitutionally vague for the reason that it fails to give adequate notice of the conduct to be avoided and punished but also because it place[d] * * * unfettered discretion in the hands of the police and thereby encourages arbitrary and discriminatory enforcement.” (32 NY2d, at 571.)
In the case of defendant Griesbeck, the accusatory instrument alleges operating privileges were revoked on May 7, 1991 upon his second felony conviction for driving while intoxicated. The sentencing minutes at page 7 under indictment No. 91-15 of May 7, 1991 read as follows: "Court: Your license, if you have one — I don’t think you have one, Mr. Griesbeck — is revoked.” The records of the Department of Motor Vehicles show a revocation was imposed on May 7th of 1991, under order No. D105230.
In the case of Hovelman, the defendant’s revocation occurred on November 11, 1992. The abstract of the defendant’s driving record lists order No. A-109050 which "revoked” defendant’s privileges, effective November 10, 1992, upon defendant’s conviction for driving while intoxicated. The order of suspension and revocation shows that the defendant had a previous alcohol- or drug-related conviction within 10 years of his conviction on November 10, 1992. The order further reads that the defendant "effective 11/10/92 is [revoked] for at least one year”. The conviction was entered on November 10, 1992, before the Village of New Hempstead Justice Court.
In the case of John Bell, the driving abstract shows that the defendant’s privileges to drive were revoked effective November 4, 1992, for a conviction for driving while intoxicated, apparently the defendant’s third alcohol-related conviction. The revocation order indicated that effective November 4, 1992, defendant was revoked for "at least one year”. The *435 order of suspension and revocation was entered by the Orangetown Justice Court on November 4, 1992, the date of the defendant’s sentence. The suspension and revocation order states that defendant was revoked for "at least 6 months”. The Department of Motor Vehicles added another six-month period as result of the defendant’s prior alcohol-related driving convictions. It should be noted that the defendant apparently was reissued a license on September 26, 1994, as his reapplication was approved after the instant charge. Each of the defendants were placed on probation and remained on probation at the time of their arrests.
The section under which the above defendants are charged, namely section 511 (2) (a), reads as follows:
"Aggravated unlicensed operation of a motor vehicle in the second degree, (a) A person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the second degree when [the] person commits the offense of aggravated unlicensed operation of a motor vehicle in the third degree as defined in subdivision one of this section; and * * *
"(ii) the suspension or revocation is based upon a refusal to submit to a chemical test pursuant to section eleven hundred ninety-four of this chapter or upon a conviction for a violation of any of the provisions of section eleven hundred ninety-two of this chapter”.
Section 1193 (2) (b) (3) concerning revocation periods provides as follows:
"2. License sanctions * * *
"(b) Revocations. A license shall be revoked and a registration may be revoked for the following minimum periods * * *
"(3) Driving while intoxicated or while ability impaired by drugs; prior offense. One year, where the holder is convicted of a violation of subdivision two, three or four of section eleven hundred ninety-two of this article committed within ten years of a conviction for a violation of subdivision two, three or four of section eleven hundred ninety-two of this article.”
Each of the defendants herein had at least two convictions for a section 1192 offense within the previous 10 years prior to their sentences. The People contend that as the statute sets forth "minimum” periods, the period of time within which a license will be revoked encompasses all the time from the date of revocation to the date defendant’s license is restored. Defendant contends in essence that the rules of strict statutory construction required for penal laws mandates dismissal of the *436 accusatory instrument due to the fact that the statute fails to provide the defendant with adequate notice as to the period of time within which he could run afoul of the law by operating his motor vehicle.
The power to license and supervise licensed drivers is a power squarely within the jurisdiction of the State. The State may enact legislation regulating driving privileges under its police powers as a matter of local safety. (People v Perkins, 166 Misc 520; Matter of Magnani v Harnett, 257 App Div 487, affd 282 NY 619, cert denied 310 US 642.) It has been held that the "valuable asset of a driver’s license cannot be withheld or revoked, absent all the trappings of due process of law”. (Rose, New York Vehicle and Traffic Law, § 23:2 [2d ed]; Bell v Burson, 402 US 535 [1971]; Matter of Pratt v Melton, 72 AD2d 887 [3d Dept 1979], affd 51 NY2d 837.)
Vehicle and Traffic Law § 510 (5) and § 1193 (2) (c) effective until October 1, 1994 provide for restoration of driving privileges. Each such section requires action by the Commissioner as does the new section 1193 (2) (c) of the New York State Vehicle and Traffic Law effective thereafter.
It has been held that while the Commissioner has the power to punish by suspending or revoking a driver’s privileges, once a court acts to suspend or revoke driving privileges, the action preempts the power of the Commissioner to punish for the same offense. (Rose, New York Vehicle and Traffic Law, op. cit., § 11:3; Matter of Coniber v Hults, 15 AD2d 252 [4th Dept 1962].) A court conviction is not necessary to sustain a revocation or suspension. (Vehicle and Traffic Law § 510 [7].) It has also been held that a court’s suspension of driving privileges during the lifetime of the defendant was illegal and was effectively limited to that period which the court could impose during the period of the one-year conditional discharge only. (People v Pabon, 119 AD2d 446 [1st Dept 1986].)
The statute in the opinion of this court is clear on its face. It imposes a minimum period of revocation and so states. In the opinion of this court, nothing could be clearer than the language of the statute providing for the minimum period of revocation based upon certain occurrences and/or violations of the Vehicle and Traffic Law. (§1193 [2] et seq.)
The defendants contend that there must come a time when the defendant becomes merely an unlicensed driver, pursuant to section 509 of the Vehicle and Traffic Law, as opposed to a revoked person pursuant to section 511 (2). Should a defen *437 dont not reapply for restoration of his/her driving privileges for many years, as the argument goes, the defendant would technically remain revoked and subject to the harsh penalties under section 511 (2) should the defendant operate a motor vehicle during that period of time. In none of the cases herein did the defendant apply for driving privileges to either the sentencing court or Commissioner. In each case the defendant remained revoked since sentencing for periods of SVi years in the case of Griesbeck and approximately 2 years in the cases of Hovelman and Bell.
In the opinion of this court, in the case of Griesbeck, the defendant was advised that his driving privileges were revoked. Furthermore, as noted on People’s No. 2 in evidence, the revocation was for "at least until approved by the court and probation department”. In the case of Griesbeck, the defendant in fact had notice that his privileges were revoked, and of the length of the revocation. The length and duration of the revocation may be construed to have been imposed for a maximum of five years. (See, People v Pabon, 119 AD2d 446, supra.) Obviously, the court cannot continue the revocation for a period longer than that which it had the defendant in its custody. (CPL 410.50 [1]; People v Pabon, supra.)
Based upon the evidence presented as to the remaining cases of Bell and Hovelman, it is unclear whether the defendant was given any certain period of revocation by the court. In the case of Bell, the order of suspension of the Orangetown Justice Court is for "at least 6 months”. It is an issue of fact for the jury as to whether the defendant was revoked and whether defendant believed that his privileges were thereafter restored or that the revocation would cease, thus creating a situation where the defendant was operating without a valid driver’s license in violation of section 509 (1). The jury will receive instructions with regard to the lesser included charge of section 509 (1) should the defendant request same. The same shall apply to Hovelman, as it is unclear in both Hovel-man and Bell as to the length of the revocation imposed by the court. Furthermore, this court is of the opinion that as the crimes are of a malum prohibitum nature, the jury must be instructed that they must find the defendant knew that his driving privileges were revoked, and that the failure of the People to establish scienter on the part of the defendant, would warrant a jury finding of not guilty.
This court is not of the opinion that the mere lapse of time would act to create a haze over the clear statutory proscrip *438 tian set forth in section 1193 (2). While the defendants claim they are not requesting this court declare the statute unconstitutional, in effect the defendants are asking for just that. The defendants, in essence, claim that the statute is unconstitutionally vague. However, in each case the defendants were well within the statutory period of court "custody” (CPL 410.50 [1]) having been placed on probation and remaining on probation at the time of their arrests. Were this not the case this court may very well have reached a different result. Given these facts, this court would be acting recklessly if it attempted to set forth a rule in the above cases which would have the net effect of decreeing that a one-year revocation is well within the meaning and intent of the statute, but two or three or four years is not. The defendant invites the court to supplant legislative action in favor of a haphazard formula which would serve no purpose but to graft an arbitrary time period upon a statute which is clear by its terms. This court declines, under the facts presented, to do so. The defendant’s motions are denied.